BUCKEYE CHECK CASHING, INC., Appellee,

v.

CAMP et al.; Sheth, Appellant.

[Cite as *Buckeye Check Cashing, Inc. v. Camp,* 159 Ohio App.3d 784, 2005-Ohio-926.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2004 CA 53.

Decided March 4, 2005.

Joel Shapiro, for appellee.

Kenneth R. Sheets, for appellants.

DONOVAN, Judge.

{¶ 1} Defendant-appellant Shawn Sheth appeals from a judgment of the Xenia Municipal Court in favor of plaintiff-appellee Buckeye Check Cashing, Inc. ("Buckeye"). Sheth contends that the trial court erred in finding that Buckeye was a holder in due course of a postdated check drawn by Sheth and therefore was entitled to payment on the instrument despite the fact that Sheth had issued a stop-payment order to his bank.

{¶ 2} In support of this assertion, Sheth argues that the trial court did not use the correct legal standard in granting holder-in-due-course status to Buckeye. In particular, Sheth asserts that the trial court used the pre–1990 Uniform Commercial Code ("UCC") definition of "good faith" as it pertains to holder-in-due-course status, which defined it as "honesty in fact." The definition of "good faith" was extended by the authors of the UCC in 1990 to also mean "the observance of reasonable commercial standards of fair dealing." The post–1990 definition was adopted by the Ohio legislature in 1994.

{¶ 3} Sheth argues that while Buckeye would prevail under the pre–1990, "honesty in fact" definition of "good faith," it failed to act in a commercially reasonable manner when it chose to cash the postdated check drawn by Sheth. The lower court conducted a bench trial in this matter on April 19, 2004, and a decision was entered on April 28, 2004, in which the trial court adjudged Buckeye to be a holder in due course and, therefore, entitled to payment. We conclude that the trial court used the incorrect "good faith" standard when it granted holder-in-due-course status to Buckeye because Buckeye did not act in a commercially reasonable manner when it cashed the postdated check drawn by Sheth.

{¶ 4} Because we accept Sheth's sole assignment of error, the judgment of the trial court is reversed.

I

{¶ 5} On or about October 12, 2003, Sheth entered into negotiations with James A. Camp [1] for Camp to provide certain services to Sheth by October 15, 2003. To that end, Sheth issued Camp a check for $1,300. The check was postdated to October 15, 2003.

{¶ 6} On October 13, 2003, Camp negotiated the check to Buckeye and received a payment of $1,261.31. Apparently fearing that Camp did not intend to fulfill his end of the contract, Sheth contacted his bank on October 14, 2003, and issued a stop-payment order on the check. Unaware of the stop-payment order, Buckeye deposited the check with its own bank on October 14, 2003, believing that the check would reach Sheth's bank by October 15, 2003. Because the stop-payment order was in effect, the check was ultimately dishonored by Sheth's bank. After an unsuccessful attempt to obtain payment directly from Sheth, Buckeye brought suit.

II

{¶ 7} Sheth's sole assignment of error is as follows:

{¶ 8} "The trial court erred by applying the incorrect legal standard in granting holder in due course status to the plaintiff-appellee because the plaintiff-appellee failed to follow commercially reasonable standards in electing to cash the check that gives rise to this dispute."

{¶ 9} R.C. 1303.32 outlines the elements required to receive holder-in-due-course status. The statute states:

---

1. Camp was the second named defendant at the trial level. He did not attend the bench trial on April 19, 2004, and a default judgment was entered against him.

{¶ 10} "(A) Subject to division (C) of this section and division (D) of section 1303.05 of the Revised Code, 'holder in due course' means the holder of an instrument if both of the following apply:

{¶ 11} "(1) The instrument when issued or negotiated to the holder does not bear evidence of forgery or alteration that is so apparent, or is otherwise so irregular or incomplete as to call into question its authenticity;

{¶ 12} "(2) The holder took the instrument under all of the following circumstances:

{¶ 13} "(a) For value;

{¶ 14} "(b) *In good faith*;

{¶ 15} "(c) Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

{¶ 16} "(d) Without notice that the instrument contains an unauthorized signature or has been altered;

{¶ 17} "(e) Without notice of any claim to the instrument as described in section 1303.36 of the Revised Code;

{¶ 18} "(f) Without notice that any party has a defense or claim in recoupment described in division (A) of section 1303.35 of the Revised Code." (Emphasis added.)

{¶ 19} At issue in the instant appeal is whether Buckeye acted in "good faith" when it chose to honor the postdated check originally drawn by Sheth. R.C. 1303.01, which is analogous to UCC 1–201, defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Before the Ohio legislature amended R.C. 1303.01 in 1994, that section did not define "good faith"; the definition of "good faith" as "honesty in fact" in R.C. 1301.01 was the definition that applied to R.C. Chapter 1303. 130 Ohio Laws 318.

{¶ 20} "Honesty in fact" is defined as the absence of bad faith or dishonesty with respect to a party's conduct within a commercial transaction. *Columbus Checkcashiers v. Stiles* (1990), 56 Ohio App.3d 159, 565 N.E.2d 883. Under that standard, absent fraudulent behavior, an otherwise innocent party was assumed to have acted in good faith. The "honesty in fact" requirement, also known as the "pure heart and empty head" doctrine, is a subjective test under which a holder had to subjectively believe he was negotiating an instrument in good faith for him to become a holder in due course. *Maine Family Fed. Credit Union v. Sun Life Assur. Co. of Canada* (Me.1999), 727 A.2d 335.

{¶ 21} In 1994, however, the Ohio legislature amended the definition of "good faith" to include not only the subjective "honesty in fact" test, but also an objective test: "the observance of reasonable commercial standards of fair dealing." 145 Ohio Laws, Part I, 1302. A holder in due course must now satisfy both a subjective and an objective test of good faith. What constitutes "reasonable commercial standards of fair dealing" for parties claiming holder-in-due-course status, however, has not heretofore been defined in the sate of Ohio.

{¶ 22} In support of his contention that Buckeye is not a holder in due course, Sheth cites a decision from the Supreme Court of Maine, *Maine Family, supra,* in which the court provided clarification with respect to the objective prong of the "good faith" analysis:

{¶ 23} "The factfinder must therefore determine, first, whether the conduct of the holder comported with industry or 'commercial' standards applicable to the transaction and second, whether those standards were reasonable standards intended to result in fair dealing. Each of those determinations must be made in the context of the specific transaction at hand. If the factfinder's conclusion on each point is 'yes,' the holder will be determined to have acted in good faith even if, in the individual transaction at issue, the result appears unreasonable. Thus, a holder may be accorded holder in due course where it acts pursuant to those reasonable commercial standards of fair dealing—even if it is negligent—but may lose that status, even where it complies with commercial standards, if those standards are not reasonably related to achieving fair dealing." Id., 727 A.2d 335, at ¶ 28.

{¶ 24} Check cashing is an unlicensed and unregulated business in Ohio. *Columbus Checkcashiers v. Stiles* (1990), 56 Ohio App.3d 159, 565 N.E.2d 883. Thus, there are no concrete commercial standards by which check-cashing businesses must operate. Moreover, Buckeye argues that its own internal operating policies do not require that it verify the availability of funds, nor does Buckeye apparently have any guidelines with respect to the acceptance of postdated checks. Buckeye asserts that cashing a postdated check does not prevent a holder from obtaining holder-in-due-course status and cites several cases in support of this contention. All of the cases cited by Buckeye, however, were decided prior to the UCC's addition of the objective prong to the definition of "good faith."

{¶ 25} Under a purely subjective "honesty in fact" analysis, it is clear that Buckeye accepted the check from Camp in good faith and would therefore achieve holder-in-due-course status. When the objective prong of the good faith test is applied, however, we find that Buckeye did not conduct itself in a commercially reasonable manner. While not going so far as to say that cashing a postdated check prevents a holder from obtaining holder-in-due-course status in every

instance, the presentation of a postdated check should put the check cashing entity on notice that the check might not be good. Buckeye accepted the postdated check at its own peril. Some attempt at verification should be made before a check-cashing business cashes a postdated check. Such a failure to act does not constitute taking an instrument in good faith under the current objective test of "reasonable commercial standards" enunciated in R.C. 1303.32.

{¶ 26} We conclude that in deciding to amend the good faith requirement to include an objective component of "reasonable commercial standards," the Ohio legislature intended to place a duty on the holders of certain instruments to act in a responsible manner in order to obtain holder-in-due-course status. When Buckeye decided to cash the postdated check presented by Camp, it did so without making any attempt to verify its validity. This court in no way seeks to curtail the free negotiability of commercial instruments. However, the nature of certain instruments, such as the postdated check in this case, renders it necessary for appellee Buckeye to take minimal steps to protect its interests. That was not done. Buckeye was put on notice that the check was not good until October 15, 2003. "Good faith," as it is defined in the UCC and the Ohio Revised Code, requires that a holder demonstrate not only honesty in fact but also that the holder act in a commercially reasonable manner. Without taking any steps to discover whether the postdated check issued by Sheth was valid, Buckeye failed to act in a commercially reasonable manner and therefore was not a holder in due course.

{¶ 27} Based upon the foregoing, Sheth's single assignment of error is sustained, the judgment of the Xenia Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed,
and cause remanded.

BROGAN, P.J. and WOLFF, J., concur.