PREFERRED CAPITAL, INC., Appellant,

v.

POWER ENGINEERING GROUP, INC. et al., Appellees.

[Cite as *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 163 Ohio App.3d 522, 2005-Ohio-5113.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 22475, 22476, 22477, 22478, 22485, 22486, 22487, 22488, 22489, 22497, 22499, 22506 and 22513.

Decided Sept. 28, 2005.

Tamara A. O'Brien and Jason E. Hickman, for appellant.

Matthew O'Connell and Victoria Barto, for appellees Houston Chapter Association General Contractors of America, Inc., Tiny's Tire Center, Inc., and Richard Oscar & Associates.

Julius P. Amourgis, for appellee Pro Temps, Inc.

Gary Brown, for appellee Doug & Associates, Inc.

Oldham & Dowling, Hamilton Desaussure Jr., for appellee Rick Hore.

Gregory Glick, L.L.C., for appellees, Power Engineering Group, Inc., Plyley Enterprises, Inc., and Custom Data Solutions, Inc.

Mark S. Shearer, for appellees PAC Heating, Inc., et al., Hambergs Dr. BM Tru–Site Optical Co., and Donn C. Lamon d.b.a. Lamon Associates.

Russell Wood, for appellees Location Real Estate, Inc., et al.

Roetzel & Andress, Bradley A. Wright and Jerome G. Wyss, for appellee, Home Furnishings of Clarkston, Inc.

Karlen J. Reed, Scott D. Schafer and Geoffrey G. Why, Massachusetts Assistant Attorneys General, amicus curiae, urging affirmance.

Howard Wayne, California Assistant Attorney General, amicus curiae, urging affirmance.

----

BATCHELDER, Judge.

{¶ 1} Appellant, Preferred Capital, Inc., appeals from the judgments of the Summit County Court of Common Pleas that dismissed its breach-of-lease-agreement complaints for lack of personal jurisdiction. We reverse and remand.

## I

{¶ 2} Preferred Capital is a company licensed to do business in Ohio and has its principal place of business in Brecksville, Ohio, in Cuyahoga County. NorVergence, Inc. is a New Jersey corporation engaged in the leasing of certain telecommunications equipment and services. In September 2003, Preferred Capital entered into a "master program agreement" with NorVergence, in which NorVergence agreed that it would assign to Preferred Capital NorVergence's rights, title, and interest in certain rental agreements[1] and rented equipment, subject to Preferred Capital's approval of the individual rental agreements. This appeal concerns 13 such virtually identical rental agreements that NorVergence entered into with various for-profit business entities in the years 2003 and 2004, and which NorVergence subsequently assigned to Preferred Capital. In each of these agreements, the renter agreed to make monthly payments for 60 months in exchange of the receipt and delivery of the rented equipment.

{¶ 3} Additionally, each of the agreements provided that an assignee to these agreements would have the same rights as NorVergence with respect to these agreements, but would not take on NorVergence's obligations thereunder. Also, the renter agreed not to assert against the assignee any claims, defenses, or set-offs it may have against NorVergence.

{¶ 4} The rental agreement also contained a section entitled "Applicable Law," which provided the following forum-selection clause:

"This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if

----

1. The parties do not contest that the rental agreement is a negotiable document subject to the provisions of the Ohio Uniform Commercial Code, R.C. Chapter 1303.

this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Rentor's assignee's sole option. You hereby waive right to a trial by jury in any lawsuit in any way relating to this rental."

After execution and assignment of these agreements, Preferred Capital sent notice of the assignment to the renters and instructions to send all rental payments to Preferred Capital at its business address in Brecksville, Ohio.

{¶ 5} Thereafter, Preferred Capital filed individual complaints against the various renters for breach of the lease agreement, including defendant-appellee Power Engineering Group, Inc., asserting that it defaulted on its monthly payment obligations under the terms of the agreements. Preferred Capital filed the claims in the Summit County Court of Common Pleas pursuant to the forum-selection clause.

{¶ 6} Each of the defendants then filed a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. They opined that the clause was unenforceable because it did not specify a particular forum and that each defendant did not have the requisite minimum contacts with Ohio to satisfy the long-arm statute, R.C. 2307.382, and further argued that Preferred Capital could not establish that exercising jurisdiction in Ohio would comport with due process. Preferred Capital responded to the motions, maintaining that the forum selection clause is valid and enforceable.

{¶ 7} The various motions were granted by the trial court. In the first case, *Preferred Capital v. Power Eng. Group, Inc.* (Dec. 15, 2004), Summit C.P. No. CV 2004 10 5737, the judge wrote a thorough opinion that detailed the court's reasoning for dismissing the complaint. The court first determined that the clause was unreasonable and unjust because it "contained absolutely no guidance as to which forum would be appropriate to resolve disputes." The court explained that because NorVergence maintained the authority to assign the agreement to any entity it desired, the location would not be determined until after assignment. The court also reasoned that most of the potential witnesses to the underlying transaction are located in Florida or New Jersey, that Power Engineering would incur significant expense in traveling to Ohio to defend against the claim, and that Preferred Capital has not disputed the alleged fact that Power Engineering is not as sophisticated a business entity as NorVergence. The court then proceeded to conclude that Preferred Capital had not met its burden of establishing that the court had jurisdiction over Power Engineering— i.e., that Power Engineering had established sufficient minimum contacts in

Ohio—and therefore ultimately dismissed the complaint for lack of personal jurisdiction.

{¶ 8} In 11 of the other 12 cases, the court entered an order dismissing the cases by simply incorporating the decision in *Power Eng. Group, Inc.* as part of the order.[2] In the 12th case, the trial judge issued an order that dismissed the case, essentially stating verbatim the decision in *Power Eng. Group, Inc.*[3]

{¶ 9} Preferred Capital timely appealed to this court from all 13 trial court judgments. Pursuant to a motion filed by Preferred Capital, this court consolidated all of these appeals. Preferred Capital asserts two assignments of error for review.[4, 5]

## II

## A

### First Assignment of Error

"The trial court erred in finding that it lacked personal jurisdiction over the defendants because the applicable contracts contained a valid forum selection clause that conferred jurisdiction upon Ohio courts."

■ {¶ 10} In its first assignment of error, Preferred Capital contends that the trial court erred in concluding that the forum selection clause was unenforceable. We agree.

■ {¶ 11} Although this appeal stems from a Civ.R. 12(B)(2) dismissal, the primary issue before this court concerns a question regarding the trial court's interpretation of the agreement. If the terms of a contract are clear and

---

**2.** These 11 cases concerned the following defendants-appellees: (1) Hambergs Dr. BM Tru–Site Optical Co.; (2) Donn C. Lamon d.b.a. Lamon Assoc.; (3) Custom Data Solutions, Inc.; (4) Doug Johnson & Assoc., Inc.; (5) Home Furnishings of Clarkston, Inc.; (6) Location Real Estate, Inc.; (7) Richard Oscar; (8) Tiny's Tire Center, Inc.; (9) Pro Temps, Inc.; (10) P.A.C. Heating, Inc.; and (11) Houston Chapter Associated General Contractors of America, Inc.

**3.** The defendant-appellee in this case was Rick Hore, C.P. No. 2004 09 5336.

**4.** Attorneys General of the States of Arizona, California, Connecticut, Florida, Illinois, Louisiana, Maryland, Massachusetts, Michigan, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, and Texas, as amicus curiae, filed a joint amicus brief. The amici are acting under their respective consumer-protection statutes in support of appellees on appeal, who were the customers of NorVergence and Preferred Capital.

**5.** On July 27, 2005, Preferred Capital filed a motion to strike appellees' notice of supplemental authority in support of appellees' brief. Appellees responded in opposition to the motion to strike. Preferred Capital's motion is granted in part. All argument, other than cited case law contained in the pleading, is stricken.

unambiguous, then their interpretation is a question of law. *Beckler v. Lorain City School Dist.* (July 3, 1996), 9th Dist. No. 95CA006049, 1996 WL 364974, citing *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. Questions of law are reviewed by an appellate court de novo. *Butler v. Joshi* (May 9, 2001), 9th Dist. No. 00CA0058, 2001 WL 489962. Because we review questions of law de novo, we do not give deference to the trial court's conclusions. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 602, 611 N.E.2d 955; *Tamarkin Co. v. Wheeler* (1992), 81 Ohio App.3d 232, 234, 610 N.E.2d 1042.

{¶ 12} A forum-selection clause contained in a commercial contract between for-profit business entities is prima facie valid. *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 175, 610 N.E.2d 987. The clause will be deemed valid and enforceable absent fraud or overreaching, unless it can be demonstrated that enforcement of the clause would be unreasonable and unjust. *Preferred Capital, Inc. v. Sturgil*, 9th Dist. No. 21787, 2004-Ohio-4453, 2004 WL 1882865, at ¶ 23, citing *Kennecorp*, 66 Ohio St.3d 173, 610 N.E.2d 987, at syllabus. Additionally, a forum-selection clause will not be invalidated simply due to the lack of sophistication of one of the parties. *Nicholson v. Log Sys., Inc.* (1998), 127 Ohio App.3d 597, 601, 713 N.E.2d 510.

{¶ 13} To invalidate a forum-selection clause based on fraud, it must be established that the fraud relates directly to the negotiation or agreement as to the forum selection clause itself and not the contract in general. *Four Seasons Ent. v. Tommel Financial Serv., Inc.* (Nov. 9, 2000), 8th Dist. No. 77248, 2000 WL 1679456. "[U]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to *agree to inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." (Emphasis sic.). Id., quoting *Moses v. Business Card Express* (C.A.6, 1991), 929 F.2d 1131, 1138.

{¶ 14} Appellees have complained that NorVergence failed to provide sufficient services to its various customers on the underlying rental and service agreements. However, at no point during the litigation have appellees made an allegation that the forum-selection clause *itself* was a product of fraud or overreaching. In fact, appellees concede that on the face of the transaction involving Preferred Capital, Preferred Capital, as assignee to NorVergence's contracts, is a holder in due course of the transferred agreements. See, generally, *Buckeye Check Cashing, Inc. v. Camp*, 159 Ohio App.3d 784, 2005-Ohio-926, 825 N.E.2d 644, at ¶ 9–19. Even if this were a contract of adhesion,

however, the forum-selection clause would nevertheless be entitled to a presumption of validity. See, generally, *Information Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, at ¶ 13, citing *Carnival Cruise Lines, Inc. v. Shute* (1991), 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622, overruled on other grounds.

▪ {¶ 15} It is one of the most basic tenets of contract law that a document should be read before being signed, and further that a party to a contract is presumed to have read what he or she signed and thus cannot defeat a contract by asserting he or she did not read it. See, e.g., *Hadden Co., L.P.A. v. Del Spina*, 10th Dist. No. 03AP–37, 2003-Ohio-4507, 2003 WL 22006842, at ¶ 15. See, also, *McAdams v. McAdams Sr.* (1909), 80 Ohio St. 232, 241, 88 N.E. 542 ("If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law"). Appellees have not denied the existence of the "floating" forum-selection clause in the contract and did not contest that the clause was part of the bargained-for terms of the agreement.

▪ {¶ 16} Additionally, appellees had the burden of establishing that it would be unreasonable or unjust to enforce the forum-selection clause. *Discount Bridal Serv., Inc. v. Kovacs* (1998), 127 Ohio App.3d 373, 376–77, 713 N.E.2d 30. "A finding of unreasonableness or injustice must, however, be based on more than inconvenience to the party seeking to avoid the forum-selection clause's requirements." *Information Leasing Corp.*, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, at ¶ 19. See, also, *Security Watch v. Sentinel Sys.* (C.A.6, 1999), 176 F.3d 369, 374, citing Restatement of the Law 2d, Conflict of Laws (1988), Section 80. Mere distance, expense, or hardship to an individual litigant is insufficient to invalidate a forum-selection clause. *Four Seasons Enterprises*, 8th Dist. No. 77248; *Nicholson*, 127 Ohio App.3d at 602, 713 N.E.2d 510. So long as the enforcement of the forum-selection clause ultimately does not deprive the litigants of a meaningful day in court, the clause will be upheld. *Information Leasing Corp.*, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, at ¶ 12, citing *Kennecorp*, 66 Ohio St.3d at 176, 610 N.E.2d 987; *Barrett v. Picker Internatl., Inc.* (1990), 68 Ohio App.3d 820, 824, 589 N.E.2d 1372, citing *The Bremen v. Zapata Off–Shore Co.* (1972), 407 U.S. 1, 19, 92 S.Ct. 1907, 32 L.Ed.2d 513, superseded by federal statute (a party must show that the trial in the selected jurisdiction would be "so manifestly and gravely inconvenient * * * that it will be effectively deprived of a meaningful day in court.").

{¶ 17} The trial court in this case reasoned that the agreement did not designate a specific forum and did not provide any guidance as to where the defendants could be hailed into court. Appellant argues that there exists no requirement in Ohio law, by which these agreements are governed, that requires jurisdiction to be stated with particularity. In fact, a number of Ohio courts have

upheld forum-selection clauses in commercial contracts in which the jurisdiction is not stated with particularity. See *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.* (C.A.6, 1994), 29 F.3d 1095, 1097 (upholding a clause that provided that the "[p]lace of jurisdiction * * * shall be at the principal place of business of the supplier"); *Bernath v. Potato Serv. of Michigan* (N.D.Ohio Sept. 30, 2002), No. 3:02 CV 7105, 2002 WL 31233240. See, also, *Preferred Capital v. Flagship Investigations, Inc.* (Dec. 3, 2004), Cuyahoga C.P. No. CV–04–537657 (upholding an identical forum-selection clause, stating that there was "no clear showing that litigating the contract dispute in Cuyahoga County is unreasonable or would result in a manifest injustice"); *Preferred Capital, Inc. v. New Tech Eng., LP* (N.D.Ohio Mar. 8, 2005), Case No. 5:04CV2301 (upholding an identical forum-selection clause).

{¶ 18} Furthermore, several cases relied upon by the trial court to support its reasoning are distinguishable from the instant case. In *Copelco Capital, Inc. v. Shapiro* (2003), 331 N.J.Super. 1, 750 A.2d 773, the New Jersey Superior Court held that the nonspecific forum-selection clause was unenforceable because it did not provide for notice as required by New Jersey law. However, the standard enunciated in *Kennecorp* does not evince a notice requirement.

{¶ 19} The second case relied upon by the trial court, *Copelco Capital, Inc. v. St. Mark's Presbyterian Church* (Feb. 1, 2001), 8th Dist. No. 77633, 2001 WL 106328, is also distinguishable. In *St. Mark's,* the court chose not to uphold the forum-selection clause. Id. However, that case involved an agreement with an unsophisticated not-for-profit entity and was thus essentially treated as a consumer contract rather than a commercial contract. As delineated above, commercial contracts, such as those involved in the instant case, are held to a different standard and enjoy a presumption of validity. See *Information Leasing Corp.,* 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, at ¶ 13. Sophistication of the parties in such contracts is not a relevant issue. See *Nicholson,* 127 Ohio App.3d at 601, 713 N.E.2d 510.

{¶ 20} Additionally, the trial court found that enforcement of the clause would result in an injustice to Power Engineering, as it would not only "force the Defendant to enter unknown waters and territory, but it would [also] effectively deprive the Defendant of its day in Court[,] * * * [because] most if not all, of the potential witnesses to the transaction are either Florida or New Jersey residents [and] * * * Defendant would incur significant expense in having to travel to Ohio to represent itself." Preferred Capital argues that it is disingenuous of appellees to maintain that they would incur significantly greater financial expenses in litigating in Ohio as compared to New Jersey, the jurisdiction to which they have admittedly validly consented in the event that the agreements were not assigned to Preferred Capital. It is hard to imagine that it would be much simpler,

financially and physically, to litigate a matter in New Jersey when appellees reside in Florida, Georgia, Michigan, New Jersey, New York, Pennsylvania, Texas, and Washington. Ultimately, however, mere inconvenience and expense are not sufficient, and we cannot find that the level of inconvenience pleaded here by appellees and reiterated by the trial court amounts a "manifest" and "grave" difficulty as contemplated by the highest court. See *Bremen,* 407 U.S. at 19, 92 S.Ct. 1907, 32 L.Ed.2d 513.

{¶ 21} Finally, we consider the objectives advanced by the Commercial Code, which governs this contract:

> "A negotiable instrument is an instrument capable of transfer by endorsement or delivery. Negotiability provides a means of passing on to the transferee the rights of the holder, including the right to sue in his or her own name, and the right to take free of equities as against the assignor/payee. * * * The purpose of the Commercial Code is to enhance the marketability of negotiable instruments and to allow bankers, brokers, and the general public to trade in confidence. * * * As a matter of sound economic policy, the Commercial Code encourages the free transfer and negotiability of commercial paper to stimulate financial interdependence." *Manor Bldg. Corp. v. Manor Complex Assoc.* (1994), 435 Pa.Super. 246, 252–253, 645 A.2d 843.

Thus, it is imperative that courts be cognizant of not discouraging the sale and transfer of commercial paper in the market. In accord with this end, we must remain aware that the more flexible the terms are in a commercial contract, the more acceptable a business transaction the contract becomes to a prospective buyer of the commercial paper. The attractiveness of the paper to the buyer, in turn, creates more sales opportunities for the commercial-paper issuer or maker. Thus, we must reach a determination in this case bearing these principles in mind.

{¶ 22} Based upon the foregoing, we find that the trial court erred when it concluded that the forum-selection clause was unenforceable in *Power Eng.* Therefore, it follows that the judgments in all remaining cases consolidated in this appeal were made in error. Preferred Capital's first assignment of error is sustained. We remand the case to the trial court to enter judgment in accordance with this decision and to hold further appropriate proceedings on the matter.

## B

### Second Assignment of Error

"The trial court erred in finding that it lacked personal jurisdiction over the defendants because the defendants have minimum contacts to the state of Ohio."

{¶ 23} In its second assignment of error, Preferred Capital contends that the trial court erred when if found that it lacked personal jurisdiction over appellees due to the absence of minimum contacts with Ohio.

{¶ 24} When a commercial agreement contains a valid forum-selection clause, a minimum-contacts analysis is not appropriate because the parties have waived the due-process/minimum-contacts requirement for personal jurisdiction by way of the forum-selection clause and have consented to the jurisdiction of the court system specified in the clause. *Kennecorp*, 66 Ohio St.3d at 174–75, 610 N.E.2d 987. Due to the commercial nature of the contract and our determination above that the forum-selection clause is valid and enforceable, the issue of the presence or absence of minimum contacts with Ohio is irrelevant, and, therefore, we need not address Preferred Capital's second assignment of error.

## III

{¶ 25} Preferred Capital's first assignment of error is sustained. Preferred Capital's second assignment of error is not addressed. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded to the trial court for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

WHITMORE, P.J., concurs.

MOORE, J., dissents.

MOORE, Judge, dissenting.

{¶ 26} Under the facts presented, I would find that it is unjust and unreasonable to enforce the forum-selection clause in the manner suggested by appellant. I, therefore, respectfully dissent from the majority's decision.

{¶ 27} The majority notes that appellees have waived any due process requirement regarding personal jurisdiction because the forum-selection clause is valid. See *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 174–175, 610 N.E.2d 987. In *Kennecorp*, the court noted that "the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a *particular court system.*" (Emphasis added.) Id. at 175, 610 N.E.2d 987. To uphold the forum-selection clause presented, this court effectively holds that appellees waived due process requirements in every conceivable jurisdiction at the time they entered into the lease. I find such a position to be untenable.

{¶ 28} In *Kennecorp,* the forum-selection clause limited jurisdiction to Ohio. Id. Accordingly, the court had no reason to determine whether a non-specific forum selection clause could waive personal-jurisdiction requirements in *every* state. I would find that it cannot.

{¶ 29} Waiver entails the voluntary relinquishment of a known right or intentionally doing an act inconsistent with claiming that right. *Mondl v. Mondl* (Dec. 5, 2001), 9th Dist. No. 20570, 2001 WL 1545638. At the time the parties entered into the lease, no mention was made that Ohio was a proper jurisdiction. I, therefore, cannot conclude that appellees voluntarily relinquished their due process rights and waived the personal jurisdiction requirements imposed by both the Ohio and United States Constitutions. Courts in general indulge in every reasonable presumption against the waiver of fundamental constitutional rights. *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, overruled on other grounds by *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. I find no reason to abandon such a presumption given the alternative interpretation of the forum-selection clause—i.e., that appellees waived their due process rights under both the federal constitution and every state constitution and subjected themselves to nationwide jurisdiction with one signature on a lease.[6]

{¶ 30} Accordingly, I would proceed to determine whether appellees had minimum contacts with Ohio to justify invoking personal jurisdiction over them.

When deciding whether a defendant falls within the reach of the long-arm statute, a court should consider three factors:

" 'First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.' " *Cincinnati Art Galleries v. Fatzie* (1990), 70 Ohio App.3d 696, 699, 591 N.E.2d 1336, 1338, quoting *S. Machine Co. v. Mohasco Industries, Inc.* (C.A.6, 1968), 401 F.2d 374, 381. *Krutowsky v. Simonson* (1996), 109 Ohio App.3d 367, 370, 672 N.E.2d 219. In the instant matter, the only connection that appellees have with Ohio are the leases assigned by NorVergence. It cannot be said, therefore, that appellees purposely availed themselves of the privilege of acting in Ohio.

{¶ 31} As a result, I find that it would be unreasonable and unjust to force appellees to be subjected to litigation in Ohio. I would hold the forum-selection

---

6. The majority's interpretation of this waiver suggests that such a waiver would also include foreign jurisdictions, as it places no limits on the concept of the waiver of due process rights.

clause unenforceable, as it attempts to waive personal jurisdiction at a national level without any reference to a specific jurisdiction. As Ohio's long-arm statute cannot be utilized to exercise jurisdiction over appellees, I would affirm the trial court's decision dismissing the cases.