[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 611.]

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 33, APPELLANT, *v.* MOHAWK MECHANICAL, INC., APPELLEE.

[Cite as *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Mohawk Mechanical, Inc.*, 1999-Ohio-209.]

*Employer and employee—Wages and hours on public works—Alleged violations of prevailing wage law—Union meets requirements of an "interested party" under R.C. 4115.03(F) and is authorized to file complaints pursuant to R.C. 4115.16, when.*

(No. 98-403—Submitted January 27, 1999—Decided September 29, 1999.)

APPEAL from the Court of Appeals for Knox County, No. 97CA13.

_____

{¶ 1} This case arises from a civil action brought by appellant, Sheet Metal Workers' Union International Association, Local Union No. 33 ("Local 33"), against appellee, Mohawk Mechanical, Inc. ("Mohawk"), for Mohawk's alleged violations of Ohio's prevailing wage law for work it did on the Knox County Career Center project ("career center").

{¶ 2} Mohawk was a subcontractor on the project, contracting with the general contractor, American Standard, Inc. ("Standard"), to install some of the necessary heating and cooling equipment at the career center. The contract price was $123,805. The career center project was exempt from the competitive bidding requirements normally associated with public works because it fell under R.C. 3313.372, which exempts certain improvements to public schools.

{¶ 3} Mohawk performed various installation and replacement tasks on the project between June 1995 and November 1995. Mohawk did not pay prevailing wage rates to its employees who worked on the career center and did not attempt to

comply with other requirements of Ohio's prevailing wage laws. Mohawk maintains that the prevailing wage laws did not apply to the career center project.

{¶ 4} Local 33 is a labor organization that represents various members involved in the building trades in Knox County. While Mohawk was engaged in the career center project, Local 33 was involved in a labor organization and representation drive with Mohawk's employees. Through its involvement with Mohawk's employees, Local 33 reviewed the employees' pay stubs and learned that Mohawk was not paying its employees prevailing wages. Local 33 asserts that some Mohawk employees, fearful of retaliation by their employer if they sought to enforce their prevailing wage rights, requested that Local 33 do so on their behalf.

{¶ 5} On September 18, 1995, Local 33 filed a prevailing wage complaint before the appropriate administrative bureau (such complaints were under the jurisdiction of the Department of Industrial Relations at the time of the filing, but during its pendency became the responsibility of the Ohio Bureau of Employment Services ["OBES"]), asserting that Mohawk failed to pay its employees prevailing wages on the career center project. By November 6, 1995, three Mohawk employees, Harry Matheny, John Vesper, and Michael Howell, had signed authorization forms that expressly granted authority to Local 33 to pursue the complaint on their behalf. Over the course of the next year, three other men who had worked for Mohawk on the project signed authorization forms.

{¶ 6} The OBES administrator did not rule on the prevailing wage complaint within sixty days. Pursuant to R.C. 4115.16(B), Local 33 then proceeded to file a complaint against Mohawk in the Knox County Court of Common Pleas. Both parties filed motions for summary judgment. The court granted Mohawk's motion, finding that Local 33 did not have standing to bring its action because it did not meet the R.C. 4115.03(F)(3) definition of an "interested party." Local 33 appealed.

{¶ 7} The court of appeals affirmed. The court found that Local 33 could not gain standing under R.C. 4115.03(F), since the statute confers standing only where the project in question was competitively bid. Further, the court held that the statute requires a labor organization to be a party to a collective bargaining agreement with the employer at issue before it may be authorized to represent that employer's employees on a prevailing wage claim. The court reasoned that, since Local 33 was not a party to a collective bargaining agreement with Mohawk, it lacked the authority to represent Mohawk's employees.

{¶ 8} The cause is before this court upon the allowance of a discretionary appeal.

_____

*Allotta & Farley Co., L.P.A., Joseph J. Allotta, Richard P. James and Marilyn L. Widman*, for appellant.

*Weldon, Huston & Keyser* and *David D. Carto,* for appellee.

*Ross, Brittain & Schonberg Co., L.P.A., Alan G. Ross* and *Brian A. Paton*, urging affirmance for *amicus curiae,* Ohio ABC, Inc.

*Benesch, Friedlander, Coplan & Aronoff L.L.P., N. Victor Goodman* and *Mark D. Tucker*, urging reversal for *amicus curiae*, the Ohio State Building & Construction Trades Council, AFL-CIO.

*Stewart Jaffy & Associates, Stewart Jaffy* and *Marc J. Jaffy*, urging reversal for *amicus curiae,* Ohio AFL-CIO.

*Bricker & Eckler L.L.P.* and *Luther L. Liggett, Jr.*, urging reversal for *amicus curiae,* Ohio Mechanical Contracting Industry, Inc.

_____

**PFEIFER, J.**

{¶ 9} We find that Local 33 meets the requirements of an interested party under R.C. 4115.03(F)(3) and thus had standing to represent the Mohawk

employees in a prevailing wage action. We reverse the judgment of the court of appeals.

{¶ 10} R.C. 4115.16(A) allows "an interested party" to file a prevailing wage complaint with the Bureau of Employment Services. R.C. 4115.16(B) provides that if the bureau administrator does not rule on the merits in sixty days, "the interested party may file a complaint in the court of common pleas of the county in which the violation is alleged to have occurred." R.C. 4115.03(F) defines an "interested party":

" 'Interested party,' with respect to a particular public improvement, means: (1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement; (2) Any person acting as a subcontractor of a person mentioned in division (F)(1) of this section; (3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees; (4) Any association having as members any of the persons mentioned in division (F)(1) or (2) of this section."

{¶ 11} This case turns on whether Local 33 meets the requirements of R.C. 4115.03(F)(3), and, specifically, whether Local 33 was "authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section * * *." The first step is to determine whether the Mohawk employees worked for "a person mentioned in division (F)(1) or (2) of this section."

{¶ 12} Standard meets the requirements of division (F)(1). The appellate court seemed to indicate that no one on the career center project could meet the description of division (F)(1), since the project was not *competitively* bid. However, R.C. 4115.03(F)(1) does not require the contractor at issue to have been involved in a competitive bid process, but only to have submitted a bid on the

4

project. There is no dispute that Standard did submit a bid for the work it performed at the career center. The contract was not awarded without consideration of cost.

{¶ 13} R.C. 4115.10(B) undercuts any argument that prevailing wage claims can be brought only in competitive bid situations. Under the statute, "[a]ny employee upon any public improvement who is paid less than the prevailing rate of wages applicable thereto may file a complaint * * *." R.C. 4115.10 makes it clear that the prevailing wage law applies to *any* public improvement not specifically excepted from the coverage of the law. R.C. 3313.372, while exempting Standard and Mohawk from the competitive bid process, does not specifically exempt them from the prevailing wage law.

{¶ 14} Since a competitive bid situation is not an element of R.C. 4115.03(F)(1), Standard meets the requirements of a "person" under division (F)(1). It follows that Mohawk, as a subcontractor of "a person mentioned in division (F)(1)," meets the requirements of division (F)(2).

{¶ 15} The key question is whether Local 33 was "authorized to represent employees of a person mentioned in division * * * (2) of this section." While the statute requires that the labor organization "exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees," it does not require that it perform that function for the employees at issue.

{¶ 16} The court of appeals erred in interpreting the statute as stating that "[t]he term 'authorized' refers to a bona fide organization being permitted to represent employees * * * for the purpose of negotiating with the employer concerning wages, hours or terms and conditions of employment." The court concluded that, since Local 33 did not have a collective bargaining agreement with Mohawk, it could not represent those employees in a prevailing wage action.

{¶ 17} There is not even a hint of a requirement in the statute that the labor organization be a party to a collective bargaining agreement with the employer in

question.  The statute states that the labor organization must exist, in whole or in part, for the purpose of negotiating with *employers*, not "the employer in question." The statute speaks in a general sense, ensuring that the labor organization in its normal course concerns itself with the stuff of the prevailing wage statute. Bargaining about wages and hours just has to be something that the labor organization normally does.  This provision ensures that employees will have their rights defended by an organization with some expertise.  Mohawk makes no claim that Local 33 does not regularly involve itself in collective bargaining negotiations for its members.

{¶ 18} The statute does not require that a majority of employees authorize the representation.  Employees of Mohawk took affirmative acts to authorize Local 33 to file a complaint on their behalf.  Local 33 claims that the union received oral authorization from Mohawk employees to represent them in the prevailing wage complaint.  While verbal authorization may be enough under the terms of the statute to allow a union to file a complaint, the record is devoid of any evidence of such authorization.  However, within sixty days of the filing of the complaint, three Mohawk employees had given written authorization to Local 33 to represent them in the prevailing wage action.  That action cured any jurisdictional defect that may have been present.

{¶ 19} Therefore, we find that Local 33 met the requirements of an "interested party" under R.C. 4115.03(F), which authorized it to file complaints pursuant to R.C. 4115.16.

{¶ 20} Accordingly, we reverse the judgment of the court of appeals on this question and remand this cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 21} R.C. 4115.16(A) provides that an "interested party" may file a complaint with the Administrator of the Bureau of Employment Services, alleging violations of the prevailing wage laws set forth in R.C. Chapter 4115. The statute thereby grants "interested parties" standing to initiate prevailing wage investigations.

{¶ 22} The union contends that it falls within the definition of "interested party" provided by subsection (F)(2) of R.C. 4115.03. It claims that it was the authorized representative of employees of a subcontractor (Mohawk) of a person "mentioned in division (F)(1)" (Standard), who had "submit[ted] a bid for the purpose of securing the award of a contract for construction of [a] public improvement," that being the heating and cooling upgrade of the Knox County Career Center.

{¶ 23} The sole issue before us is whether the union had standing to file a prevailing wage complaint on behalf of employees of Mohawk. We need not, and should not, address Mohawk's proposition of law on the broad terms presented by it. Instead, this case should be narrowly resolved solely based on statutory interpretation of the language the General Assembly chose to use in R.C. 4115.03.

{¶ 24} Had the General Assembly chosen to limit subsection (F)(1) "interested party" status to persons who had submitted *competitive* bids, it could have expressly so provided. It did not. I agree with the majority to the extent that it recognizes that "interested part[ies]," as defined in R.C. 4115.03(F)(1), may include persons who have submitted bids in the form of requests for proposals as well as persons who have submitted formal competitive bids. I concur in the opinion of the majority insofar as it recognizes Standard to be a legal person who had submitted "a bid for the purpose of securing the award of a [public improvement] contract," thereby qualifying as an interested party under subsection (F)(1) of R.C. 4115.03. Similarly, Mohawk qualifies as an interested party pursuant to subsection (F)(2), in that it was a "subcontractor of a person mentioned in division (F)(1) of this section," *i.e.*, Standard.

**{¶ 25}** It must therefore be determined whether the union fits within the definitional language of subsection (F)(3). The union asserts that it meets all three criteria set forth therein: (1) it is a bona fide organization of labor; (2) it was authorized to represent employees of a person mentioned in subsection (F)(1) or (2) of the statute, *i.e.*, Mohawk; and (3) it exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees.

**{¶ 26}** Like the majority, I also reject Mohawk's argument that Local 33 does not fall within subsection (F)(3) of the R.C. 4115.03, in that the union had not negotiated with either Standard or Mohawk on behalf of its members. Local 33 did exist, "in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees." I do not read the statute to impose a requirement that the union must exist, at least in part, for the purpose of negotiating with any particular employer. It suffices that the union exists for the purpose of negotiating wages, hours, or terms and conditions of employment with employers generally.

**{¶ 27}** I dissent to the judgment of the majority because I believe the record before us fails to demonstrate that the union met the second branch of the three-prong test prescribed by subsection (F)(3). The record fails to prove that the union was "authorized to represent" Mohawk employees at the time the union filed its administrative complaint.

**{¶ 28}** On September 18, 1995, Local 33 filed an administrative complaint alleging that Mohawk had violated the prevailing wage law. Local 33 acknowledges that it had no members who were Mohawk employees on that date or at any other time. It contends, however, that it had obtained signed authorization forms from six Mohawk employees. The forms stated that the signatories "authorize[d] * * * Local 33, its agents and representatives to represent me in all manners [*sic*] pertaining to my claims regarding prevailing wage payments, pursuant to any Federal or State law."

8

All of the forms were signed on or after October 10, 1995, subsequent to filing of the administrative complaint with the Department of Industrial Relations.

{¶ 29} In my view, the execution of authorization forms may be used to authorize a union to stand in the place of non-member employees in regard to alleged prevailing wage claims. Execution of authorization forms such as those used in this case is analogous to the creation of an attorney-in-fact relationship, and sufficient to satisfy subsection (F)(3), if the forms are executed before the union takes any action on behalf of the employees. That would seem to be a basic principle that applies in a myriad of circumstances.

{¶ 30} In the case at bar, the union did not hold "interested party" status at the time the administrative complaint was filed. In order to demonstrate its standing as an interested party pursuant to R.C. 4115.03(F)(3) based on the execution of authorization forms by non-union members, a labor organization should be required to demonstrate that the persons it claims to represent are, in fact, employees of the company accused of violating prevailing wage laws. As the record failed to establish that the authorization forms in favor of Local 33 were signed by persons employed by Mohawk at the Knox County Career Center project and that those forms had been executed prior to the filing of the administrative complaint, the trial court correctly ruled that the union had failed to establish standing to file prevailing wage claims on behalf of non-union member employees of Mohawk.

{¶ 31} The majority holds that the execution by Mohawk employees of written authorization forms *after* the filing of the administrative complaint cured the deficiency. I do not agree. There is no evidence that the union advised the Department of Industrial Relations of the subsequent signing of these forms, and the department's failure to act on the complaint may well have been based on an administrative determination that the complainant had not demonstrated standing. I note that the printed complaint form provided by the Department of Industrial Relations, and used

by the union in this case, states, "To allege Interested Party status you MUST attach with the complaint sufficient evidence that you [comply with R.C. 4115.03(F)]."

{¶ 32} R.C. 4115.16(B) contemplates a determination of the merits of a prevailing wage claim by a common pleas court only where the appropriate administrative agency has not ruled on the complaint within sixty days after its filing. I therefore cannot join in the majority's conclusion that the deficiency in the legal status of the union, which existed at the time of filing of the administrative complaint, was cured by the subsequent execution of authorization forms, especially where there is no reason to believe that their execution, and consequent establishment of standing, was brought to the attention of the administrative agency. The record does not support the conclusion that Local 33 either amended its administrative complaint or filed a new complaint after having obtained the requisite interested party status.

{¶ 33} There is no statutory provision allowing a complainant to retroactively obtain the necessary interested party status so as to validate a prematurely filed complaint by a complainant who lacked standing. Rather, R.C. 4115.03(F)(3) uses the present tense in defining an "interested party" as a labor organization that "*is* authorized to represent" affected employees.

{¶ 34} The majority gives new meaning to the legal status of an interested party and to the words "is authorized." I trust we would not so easily change the meaning of "authorized" if a lawyer who has a right as a member of the Ohio bar to represent a person in a court does so with no authorization by the person to act as the person's lawyer.

{¶ 35} I would hold that, because Local 33 was not authorized to act for Mohawk employees on the date it filed the prevailing wage complaint, Local 33 lacked standing when it filed the complaint and that the complaint thereby was legally deficient. Accordingly, I would hold that the common pleas court lacked jurisdiction to consider the merits of the prevailing wage claims.

{¶ 36} I therefore respectfully dissent to the judgment of the majority.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

----------------