The STATE of Ohio (VILLAGE OF MONROEVILLE), Appellee,

v.

WHEELING & LAKE ERIE RAILWAY COMPANY, Appellant.

[Cite as *Monroeville v. Wheeling & Lake Erie Ry. Co.*, 152 Ohio App.3d 24, 2003-Ohio-1420.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–02–026.

Decided March 14, 2003.

</div>

K. Alec Thornton, for appellee.

Sheila A. McKeon and Richard J. Scislowski, for appellant.

---

LANZINGER, Judge.

{¶ 1}   This is an appeal by Wheeling & Lake Erie Railway Co. of a $1,000 fine and costs for a first-degree misdemeanor conviction of R.C. 5589.21, the statute that governs the length of time a stopped train can block a roadway.   Because we conclude that the downed gates did not constitute an "obstruction" within the meaning of the statute, we reverse.

{¶ 2}   The facts in this case are not disputed.   On October 18, 2001, Officer Darren Martell received a phone call at 7:00 a.m. advising that railroad gates at the crossing on State Route 547 in the village of Monroeville were causing traffic to back up.   The caller indicated, however, that she could see a train approaching and that the problem should fix itself.   During his road patrol at 7:45 a.m., Officer Martell noticed that the lights and gates were activated at the State Route 547 railroad crossing but that there was no train.   He directed traffic around the gates until a railroad technician arrived about 45 minutes later and raised them.

{¶ 3}   Wheeling & Lake Erie Railway Co. was charged with a violation of R.C. 5589.21(A) as a result of the incident.   At the May 1, 2002 bench trial, the railroad called the supervisor responsible for the testing, maintenance, and repairs of signal devices to testify.   He characterized the device at this particular crossing as a state-of-the-art train-detection system.   The system is regularly

maintained and was designed as required by federal law to include a fail-safe, so that if the sensors were ever unable to detect an approaching train due to certain conditions, the gates would close automatically as a safety precaution. On the date of the alleged violation, a signal maintainer, the railroad's employee in charge of the gates, was notified immediately. He reported that a ballast condition called low EX had occurred, meaning that the ballast (the gravel between the rails) had dried out due to the weather conditions, causing an electrical conductivity problem and an inability of the system to detect a train. Since these conditions exceeded a preset threshold, the system went into fail-safe mode, and the gates dropped.

{¶ 4} The railroad also called as a witness the signal maintainer who responded on October 18, 2001. He recalled at trial that weather conditions affected the function of the gates on that day and that he opened the gate by recalibrating the system.

{¶ 5} The trial court did not find that these circumstances were "wholly beyond the control of the railroad company" and, therefore, found it guilty of violating R.C. 5589.21, a first-degree misdemeanor under R.C. 5589.99(D).

{¶ 6} Appellant railroad raises a single assignment of error:

{¶ 7} "The trial court erred in its interpretation of R.C. 5589.21, and the railroad's conviction for violating that statute is erroneous as a matter of law."

{¶ 8} The railroad urges a strict construction of R.C. 5589.21 because it is a penal statute. According to the railroad, the term "obstruct" must be read to mean a complete blockage of the railroad crossing. Because traffic was able to proceed around the downed gates with the assistance of a police officer, the crossing was not completely "obstructed," and, therefore, no violation of the statute occurred. The railroad contends that the trial court erred when it failed to interpret R.C. 5589.21 to require a complete blockage.

{¶ 9} This court reviews a trial court's interpretation and application of a statute under a de novo standard. *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721, 756 N.E.2d 1258, citing *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596. Statutory interpretation involves a question of law; therefore, we do not give deference to the trial court's determination. Id. "The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if the language is unambiguous, to then apply the clear meaning of the words used." *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d 125, 127, 661 N.E.2d 1011. R.C. 1.42 provides that "[w]ords and phrases shall be read in context and construed according to the rules of

grammar and common usage." See, also, *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939.

{¶ 10} A court may interpret a statute only where the statute is ambiguous. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27, 512 N.E.2d 332. A statute is ambiguous if its language is susceptible of more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 513, 668 N.E.2d 498. When a court must interpret a criminal statute, the language should be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A). However, strict construction should not override commonsense and evident statutory purpose. *State v. Sway* (1984), 15 Ohio St.3d 112, 116, 15 OBR 265, 472 N.E.2d 1065.

{¶ 11} The statutes relating to blocked crossings, including R.C. 5589.21, were amended effective October 27, 2000. An entirely new section was added to set forth the statutory intent concerning obstruction of grade crossings by trains. R.C. 5589.20 provides:

{¶ 12} "The general assembly finds that the improper obstruction of railroad grade crossings by trains is a direct threat to the health, safety, and welfare of the citizens of this state inasmuch as improper obstructions create uniquely different local safety problems by preventing the timely movement of ambulances, the vehicles of law enforcement officers and firefighters, and official and unofficial vehicles transporting health care officials and professionals. It is the intent of the general assembly in amending sections 5589.21, 5589.24, and 5589.99 of the Revised Code that the health, safety, and welfare of the citizens of this state be enhanced through those amendments."

{¶ 13} This background is helpful in reviewing R.C. 5589.21, which provides:

{¶ 14} "(A) No railroad company shall obstruct, or permit or cause to be obstructed a public street, road, or highway, by permitting a railroad car, locomotive, or other obstruction to remain upon or across it for longer than five minutes, to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highway.

{¶ 15} "* * *

{¶ 16} "(C) This section does not apply to obstruction of a public street, road, or highway by a continuously moving through train or caused by circumstances wholly beyond the control of the railroad company, but does apply to other obstructions, including without limitation those caused by stopped trains and trains engaged in switching, loading, or unloading operations."

{¶ 17} The terms "obstruct" and "obstruction" are not defined in the statutes pertaining to the blockage of crossings. Merriam Webster's Collegiate Dictionary (10th Ed.1996) 803, defines "obstruct" as follows: "to block or close up by an obstacle; to hinder from passage, action or operation; to cut off from sight." Because the term "obstruct" is not clearly defined in the statute and is subject to more than one interpretation, we conclude that the term is ambiguous. As noted above, R.C. 5589.21 uses the phrase "a railroad car, locomotive, or *other obstruction*." (Emphasis added.) R.C. 5589.20 refers to improper obstruction by trains. Thus, it appears from the foregoing that the statutes contemplate complete blockage, and since the term must be construed strictly against the state, we conclude that the term "obstruct" requires a complete blockage.

{¶ 18} In this case, the trial court interpreted "other obstruction" to include the downed crossing gates at State Route 547. The evidence before the trial court did not show that the crossing gates completely blocked the roadway or that traffic could not be diverted around the gates. At most, this was a partial obstruction that arguably did not "block or close up by an obstacle" or "hinder from passing." Because the roadway was not completely blocked, we conclude that the railroad did not "obstruct" the roadway within the meaning of R.C. 5589.21.

{¶ 19} On consideration whereof, we find that substantial justice has not been done the party complaining. We find appellant Wheeling & Lake Erie Railway's sole assignment of error well taken; the judgment of the Norwalk Municipal court is reversed, and appellant's conviction and sentence are vacated. Costs of this appeal are assessed to appellee.

Judgment reversed.

PETER M. HANDWORK, P.J., and RICHARD W. KNEPPER, J., concur.