{¶ 44} I would affirm the decision of the trial court in its entirety and respectfully dissent from the majority's resolution of both assignments of error.
 {¶ 45} With respect to the Union's first assignment of error, I conclude that R.C. 4115.03(F)(3) does not contemplate that an employee organization may file a complaint on behalf of all employees as an "interested party" based solely on a written authorization of representation granted by one. As the majority notes, R.C. 4115.03(F)(3) defines an interested party, in part, as "[a]ny bona fide organization of labor which has as members or is authorized to represent employees" of a person referenced in R.C. 4115.03(F)(1) or (F)(2). To conclude that one employee — let alone one employee whose work is offsite and whose involvement in the public improvement is speculative, at best — to effect an authorization of legal representation goes far beyond what the legislature intended.
 {¶ 46} In Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v.Mohawk Mechanical, Inc. (1999), 86 Ohio St.3d 611, the Supreme Court of Ohio addressed the representation requirements of R.C. 4115.03(F)(3) and concluded that, on the facts of that case, the written authorizations of several employees were effective. In that case, the Union had engaged in an organizational drive with the employer's employees, but did not yet represent the employees for purposes of collective bargaining. At issue in that case was whether R.C. 4115.03(F)(3) *Page 21 
required the Union to be the employee representative for purposes of collective bargaining in order to be an interested person under that subsection, which also provides that an employee organization must "exist, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees[.]" Mohawk, 86 Ohio St.3d at 613. Six employees signed written authorizations at one point or another during the dispute, and the Union filed a complaint alleging violations of the prevailing wage statute. The Court concluded that it was sufficient for purposes of R.C. 4115.03(F)(3) "that the labor organization in its normal course concerns itself with the stuff of the prevailing wage statute [because] [bargaining about wages and hours just has to be something that the labor organization normally does." Id. at 614. Accordingly, the Court determined that R.C. 4115.03(F)(3) did not require the existence of a collective bargaining agreement or an affirmative vote by a majority of employees in order for the Union to qualify as an interested party.
 {¶ 47} Significantly, the Mohawk decision was limited to these threshold issues. It does not address the scope of the Union's representation. Indeed, there is nothing in the opinion that would indicate that the Union's participation as an interested party related to any employees other than those who provided written authorizations of representation. Justice Moyer's dissent is illustrative on this point. While agreeing with the majority's statement of the law, the dissent parted ways with the majority on the issue of the timing of the authorizations, concluding *Page 22 
that an authorization must be signed before a complaint under the prevailing wage statute is filed by the purportedly interested party. As the dissent explained:
 "In my view, the execution of authorization forms may be used to authorize a union to stand in the place of non-member employees in regard to alleged prevailing wage claims. Execution of authorization forms such as those used in the case is analogous to the creation of an attorney-in-fact relationship, and sufficient to satisfy subsection (F)(3), if the forms are executed before the union takes an action on behalf of the employees. * * * In order to demonstrate its standing as an interested party pursuant to R.C. 4115.03(F)(3) based on the execution of authorization forms by non-union members, a labor union should be required to demonstrate that the persons it represents are, in fact, employees of the company accused of violating prevailing wage laws." (Emphasis added.) Mohawk at 616-17, Moyer, C.J., dissenting.
 {¶ 48} It appears more than likely that the representation at issue inMohawk related to the employees whose authorizations were at issue — not to employees at large, whether or not they had authorized it.
 {¶ 49} Mohawk does not stand for the proposition that once a single employee authorizes representation under R.C. 4115.03(F)(3), a labor organization has carte blanche authority to represent the interests of all. The majority's inference to the contrary is unwarranted, and I would overrule the Union's first assignment of error on this basis.
 {¶ 50} I also disagree with the majority's resolution of the Union's second assignment of error and would affirm the judgment of the trial court granting summary judgment to Gene's because the language of R.C. Chapter 4115 and, in particular, R.C. 4115.05, when considered in its totality, is consistent with the *Page 23 
Supreme Court of Ohio's decision in Clymer v. Zane (1934),128 Ohio St. 359. The majority attempts to limit the practical effects of its holding, but one might fairly ask at what point the fabrication process achieves the "intimate connection" that the majority envisions. When a contractor produces duct work in the normal course of its business for its own use in construction activities, is the connection established when some of its materials are used in relation to a public improvement? Must the fabricator of materials that are incorporated in machines used in job assembly pay the prevailing wage because the machine is ultimately used "in connection with a public work"? When certain off-site employees are paid for fabrication of materials, how is the fraction of their time spent on those items that become part of a public improvement to be determined and compensated out of an entire working day? Must a contractor now record those fractions of working time spent by off-site employees whose work bears a tangential relationship to material used in public improvements? Simply put, the rule is unworkable.
 {¶ 51} I respectfully dissent. *Page 1