**OHIO VALLEY ASSOCIATED BUILDERS AND CONTRACTORS,**
**Appellant and Cross–Appellee,**

v.

**INDUSTRIAL POWER SYSTEMS, INC., Appellee and Cross–Appellant.**

[Cite as *Ohio Valley Associated Builders & Contrs. v. Indus. Power Sys., Inc.,* 190 Ohio App.3d 273, 2010-Ohio-4930.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1099.

Decided Oct. 8, 2010.

Jill A. May, Bradley C. Smith, and Brock A. Schoenlein, for appellant.

Luther L. Liggett Jr. and Matthew T. Anderson, for appellee.

Joseph M. D'Angelo, for amicus curiae, Ohio Institute for Fair Contracting.

PRESTON, Judge.

{¶ 1} Plaintiff-appellant and cross-appellee, Ohio Valley Associated Builders and Contractors ("ABC"), appeals the Lucas County Court of Common Pleas' grant of summary judgment in favor of defendant-appellee and cross-appellant, Industrial Power Systems, Inc. ("IPS"), on its complaint alleging that IPS violated Ohio's prevailing-wage laws. Cross-appellant, IPS, appeals both the trial court's grant of summary judgment and the trial court's denial of its motion for attorney's fees. For the reasons that follow, we reverse.

{¶ 2} The relevant facts of this case are not disputed. The University of Toledo planned two public-improvement[1] projects for the renovations of University Hall and Carlson Library. Westfield Group, an electrical contractor and member of ABC, submitted bids for the award of contracts for the projects. IPS, a heating, ventilation, and air conditioning ("HVAC") and plumbing contractor, and not a member of ABC, submitted and was awarded a bid for the HVAC contracts for the projects.

{¶ 3} After IPS began working on the projects, ABC suspected that IPS was in violation of Ohio's prevailing-wage law. As a result, ABC filed two administrative complaints with the Ohio Department of Commerce, Division of Labor, Bureau of Wage and Hour on or about November 3, 2008.[2] After the director of commerce

---

1. The parties do not dispute that the projects were public improvements within the meaning of Ohio's prevailing-wage law, R.C. 4115.03 et seq.

2. The filing date of the two administrative complaints is not clear from the record. The administrative complaints were signed on October 29, 2008, but both civil complaints filed in the trial court and ABC's memo in opposition to the motion for summary judgment claim that the administrative complaints were filed on or about November 6, 2008. In their appellate briefs, however, ABC, along with amicus curiae, Ohio Institute for Fair Contracting ("OIFC"), stated that the administrative complaints were filed on or about November 3, 2008. Likewise, the record contains a letter dated November 3, 2008, from the Ohio Department of Commerce acknowledging receipt of ABC's complaint. The trial court did not specifically find on which

failed to issue a final determination within 60 days, ABC filed two complaints in the Lucas County Court of Common Pleas pursuant to R.C. 4115.16(B) on January 21, 2009. One complaint was assigned case No. CI09–1366, and the other complaint was assigned case No. CI09–1367.

{¶ 4} On March 19, 2009, IPS filed a motion to consolidate the cases. On March 30, 2009, the trial court ordered that both cases be consolidated under case No. CI09–1366 and dismissed case No. CI09–1367. That same day, IPS also filed a motion to dismiss and motion for a more definite statement in response to ABC's complaint. On September 4, 2009, the trial court denied both of IPS's motions.

{¶ 5} On November 5, 2009, IPS filed a motion for summary judgment, arguing that ABC lacked standing to pursue a prevailing-wage complaint against it, that ABC failed to identify any prevailing-wage violations, that ABC failed to exhaust its administrative remedies, and that it was entitled to attorney fees under R.C. 4115.16(D) and Civ.R. 11 for defending the action.

{¶ 6} On December 14, 2009, ABC filed its memorandum in opposition, arguing that it had standing as an interested party under R.C. 4115.03(F)(4), that R.C. 4115.16(B) permitted it to file the complaint, that a material question of fact concerning IPS's failure to follow Ohio's prevailing-wage law prevented summary judgment, and that IPS was not entitled to attorney fees, because IPS failed to show that it did not violate Ohio's prevailing-wage law and ABC's complaint was filed in good faith based on ample evidence of IPS's violations.

{¶ 7} On March 10, 2010, the trial court granted IPS's motion for summary judgment, finding that ABC lacked standing, but the trial court denied IPS's request for attorney fees, finding that issue moot in light of the dismissal.

{¶ 8} On April 7, 2010, ABC filed its notice of appeal. IPS filed its notice of cross-appeal on April 15, 2010. On June 25, 2010, this court granted the Ohio Institute for Fair Contracting ("OIFC") leave to file an amicus brief.

{¶ 9} ABC appeals raising one assignment of error. IPS appeals raising two assignments of error. We will combine ABC's assignment of error with IPS's second assignment of error on cross-appeal for discussion.

### ABC's Assignment of Error

The trial court erred when it granted defendant/appellee IPS's motion for summary judgment.

---

date the administrative complaints were filed, so we elect to use November 3, 2008, as the filing date for purposes of this appeal. Even if ABC's administrative complaint was filed on the latest date of November 6, 2008, both of ABC's civil complaints were filed on January 21, 2009, which was well beyond R.C. 4115.16(B)'s 60–day waiting period.

Cross–Appellant IPS's Assignment of Error No. II

The trial court erred by not holding that ABC lacks standing for failing to bid against IPS on its HVAC/plumbing bid, the very reason that ABC suffered no damages.

{¶ 10} In its sole assignment of error, ABC argues that the trial court erred in granting IPS's motion for summary judgment on the basis of standing, since it was an "interested party" under R.C. 4115.03(F)(4). Specifically, ABC argues that one of its members, Westfield Group, submitted a bid for a contract to perform electrical work on the two University of Toledo public improvements, which grants it standing under the statute. ABC also argues that R.C. 4115.03(F) does not require specific monetary damages for interested-party status, as the trial court found.

{¶ 11} Cross-appellant IPS, in its second assignment of error, argues that ABC lacks standing to pursue its prevailing-wage complaint because ABC's member, Westfield Group, never bid on the HVAC and plumbing contracts from which the alleged prevailing-wage violations stem. Rather, Westfield Group was a successful bidder on electrical contracts for the public improvement. IPS argues that the phrase "a contract" in R.C. 4115.03(F)(1) requires that the interested party bid on the *same contract* from which the alleged prevailing-wage violation stems—not merely *any contract* for the public improvement. IPS argues that this interpretation of R.C. 4115.03(F)'s definition of interested party is consistent with common-law standing and Civ.R. 17's requirement that actions be prosecuted by the real party in interest.

{¶ 12} OIFC argues that ABC was an interested party under R.C. 4115.03(F)(4)'s plain language, since its member, Westfield Group, submitted a bid for a contract for the public improvement. OIFC further argues that the trial court's reliance upon common-law standing was misplaced, since ABC has statutory standing. OIFC also contends that IPS's limited interpretation of interested-party standing is contrary to the purposes of the prevailing-wage law.

{¶ 13} An appellate court reviews a lower court's decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the nonmoving party, and the conclusion is adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150. Likewise, both standing and statutory interpretation are questions of law reviewed de novo on appeal. *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23 (standing); *Monroeville v. Wheeling & Lake Erie Ry. Co.,* 152 Ohio App.3d 24,

2003-Ohio-1420, 786 N.E.2d 504, ¶ 9 (statutory interpretation); *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8 (same). De novo review is independent and without deference to the trial court's judgment. *Monroeville*, 152 Ohio App.3d 24, 2003-Ohio-1420, 786 N.E.2d 504, at ¶ 9. See also *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949.

{¶ 14} Ohio's prevailing-wage laws are codified in R.C. Chapter 4115. These provisions generally require contractors and subcontractors for public-improvement projects to pay laborers and mechanics the prevailing wage in the locality where the project is to be performed. *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199, 926 N.E.2d 600, ¶ 10, citing R.C. 4115.03 through 4115.21 and *J.A. Croson Co. v. J.A. Guy, Inc.* (1998), 81 Ohio St.3d 346, 349, 691 N.E.2d 655. "[T]he legislative intent of the prevailing-wage law in R.C. Chapter 4115 is to 'provide a comprehensive, uniform framework for, *inter alia*, worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state.'" *Bergman v. Monarch Constr. Co.*, 124 Ohio St.3d 534, 2010-Ohio-622, 925 N.E.2d 116, ¶ 10, quoting *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 431 N.E.2d 311 (plurality opinion). The law's primary purpose " 'is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.'" *Bergman* at ¶ 10, quoting *Moore* at 91, 431 N.E.2d 311.

{¶ 15} R.C. 4115.16(A) authorizes an "interested party" to file a complaint with the director of commerce alleging a prevailing-wage violation. *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 11. If the director has not ruled on the merits of the complaint within 60 days, the interested party may file a complaint in the court of common pleas of the county in which the violation allegedly occurred pursuant to R.C. 4115.16(B). Id. An "interested party" with respect to a particular public improvement is defined as:

(1) *Any* person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement;

(2) *Any* person acting as a subcontractor of a person mentioned in division (F)(1) of this section;

(3) *Any* bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;

(4) *Any* association having as members *any* of the persons mentioned in division (F)(1) or (2) of this section.

(Emphasis added.) R.C. 4115.03(F)(1) through (4); Ohio Adm.Code 4101:9–4–02(Q). "Courts have construed the definition of an interested party broadly to further the purposes of the prevailing-wage law." *Internatl. Assn. of Bridge, Structural, Ornamental & Reinforcing Iron Workers, Local 372, AFL–CIO v. Sunesis Constr. Co.*, 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, ¶ 5.

{¶ 16} The trial court here granted IPS's motion for summary judgment, finding that ABC lacked standing to file a prevailing-wage complaint against IPS. Although the trial court found that ABC had exhausted its administrative remedies and that "it is arguable that ABC technically qualifies as an 'interested party' under R.C. 4115.03(F)(4)," it nevertheless found that ABC lacked standing because ABC failed to allege that Westfield Group or any of ABC's members had suffered any actual damages or concrete injury as a result of IPS's alleged prevailing-wage violations. The trial court also noted that ABC's complaint sought to redress damages allegedly sustained by *IPS* employees, but ABC could not represent IPS employees, since it was not a labor organization. The trial court also found that there was no evidence that any IPS employee was a member of ABC or that any IPS employee authorized ABC to bring the prevailing-wage complaint on their behalf.

{¶ 17} First, we must determine whether the trial court's reliance upon common-law standing was appropriate in this case. This court's opinion in *United Brotherhood of Carpenters & Joiners of Am., Local Union No. 1581 v. Edgerton Hardware Co., Inc., d.b.a. JMS Mechanical Co.*, 6th Dist. No. WM–06–17, 2007-Ohio-3958, 2007 WL 2216964, is instructive. In that case, this court was presented with the question of whether a carpenters and joiners' union ("Local 1581") had standing to assert a prevailing-wage complaint on behalf of JMS Mechanical Company employees who had performed plumbing and sheet metal work on a city-hall project. 2007-Ohio-3958, 2007 WL 2216964, at ¶ 1, 5, 10. In support of its complaint, Local 1581's business manager submitted an affidavit in which he averred that Duerk Construction, a company that employed members of Local 1581, submitted a bid for the construction of the city hall, but it was not a successful bidder. Id. at ¶ 5. Despite that fact, the trial court reasoned that Local 1581 lacked standing to bring an action against JMS pursuant to R.C. 4115.16(B) because JMS's employees would have been members of a different union than those employees represented by Local 1581. Id. at ¶ 10.

{¶ 18} On appeal, this court found that the trial court "interpreted 'interested party' as it relates to R.C. 4115.03(F)(3) to be a labor organization that represents only those bidding contractors or subcontractors whose union member employees *perform the same function on a public improvement.*" (Emphasis added.) Id.

This court ultimately rejected the trial court's interpretation of R.C. 4115.03(F)(3). Although this court began its standing analysis by acknowledging the common-law "personal stake" doctrine, in the paragraphs immediately following, this court stated:

> In the case before us, R.C. 4115.03, et seq, is *determinative* of the question of whether Local 1581 has standing to bring an action based upon appellee's alleged failure to pay a prevailing wage to its employees who worked on the construction of the public improvement, a city hall. *Thus, this cause involves a question of statutory interpretation.*
>
> * * *
>
> In order to have standing to institute a claim founded on JMS' failure to pay a prevailing wage, Local 1581 must be an "interested party" within the meaning of R.C. 4115.03 * * *.

(Emphasis added.) Id. at ¶ 12–14. Thereafter, this court examined R.C. 4115.03(F)'s definition of "interested party" and simply concluded:

> Words used in a statute are to be taken in their usual, normal, and customary meaning. R.C. 1.42. If those words are plain and unambiguous, we cannot engage in statutory interpretation. *Sears v. Weimer* (1944), 143 Ohio St. 312[, 28 O.O. 270], 55 N.E.2d 413, paragraph five of the syllabus. "Any" is defined as "one or some indiscriminately of whatever kind" and is "used to indicate one selected without restriction." Merriam–Webster's Collegiate Dictionary (10 Ed.1996) 53. As applied to the present case, and keeping in mind the legislative intent in enacting prevailing wage law, the uncontroverted evidence offered by Local 1581, which is *any* (of whatever kind) labor organization, establishes that its members work for Duerk Construction Company, that is, *any* (of whatever kind) person. Duerk Construction Company submitted a bid on a contract for the construction of a city hall in Holiday City, Williams County, Ohio. Consequently, Local 1581 is an "interested party" within the meaning of R.C. 4115.03(F) and has the standing required to pursue administrative and civil remedies under R.C. 4115.16.

(Emphasis sic.) Id. at ¶ 19. Therefore, it is clear that this court's standing analysis in *Edgerton* focused *exclusively* on whether Local 1581 was an interested party as defined in R.C. 4115.03(F), as a matter of statutory interpretation. Id. at ¶ 12. Since Local 1581 was an interested party under R.C. 4115.03(F)'s plain language, this court found that Local 1581 had standing to pursue administrative and civil remedies under R.C. 4115.16 and reversed the trial court's decision. Id. at ¶ 19–20.

{¶ 19} The trial court here acknowledged this court's opinion in *Edgerton*, noting that "[p]ursuant to *Local 1581 v. JMS*, the fact that ABC's member (Westfield Group) bid only on electrical contracts for the project, while IPS bid

only on the HVAC/plumbing contracts is insufficient to deny ABC standing to bring a prevailing-wage action against IPS." The trial court even acknowledged that "it is arguable that ABC technically qualifies as an 'interested party' under R.C. 4115.03(F)(4) because it is an association that has a member (Westfield Group) that submitted a bid for the purposes of securing the award of a contract for construction of the subject University of Toledo public improvements." However, the trial court found that this court's citation of the personal-stake standing doctrine in *Edgerton* required that ABC not only be an interested party under the statute but also have standing under common law.

{¶ 20} Specifically, the trial court found the Ohio Supreme Court's decision in *Ohio Constrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 643 N.E.2d 1088, cited in *Edgerton*, controlling. The facts and procedural posture of this case, however, are easily distinguishable from *Bicking*. To begin with, *Bicking* did not involve an interested-party prevailing-wage action under R.C. 4115.16(B), as in the case at bar. Rather, the Ohio Contractors Association ("OCA") in *Bicking* brought an action against the village of South Point seeking *injunctive and declaratory relief* for the village's alleged violations of R.C. Chapter 731 and other statutory provisions governing competitive bidding. 71 Ohio St.3d at 319, 643 N.E.2d 1088; *Ohio Contractor's Assn. v. Bicking* (Sept. 21, 1993), 10th Dist. No. 93AP–939, 1993 WL 379169. That fact, in and of itself, makes *Bicking* inapplicable here. Nevertheless, the facts of this case are further distinguishable from *Bicking*, because it is undisputed here that ABC's member, Westfield Group, submitted a bid for the purpose of securing a contract for the public-improvement projects at the University of Toledo. OCA's member-contractors never submitted bids for the public-improvement project in *Bicking*. 71 Ohio St.3d at 319–321, 643 N.E.2d 1088. In fact, the court in *Bicking* found that OCA lacked standing *precisely because* its member-contractors never submitted or even intended to submit a bid for the project. Id. Thus, any reliance upon *Bicking* here is misplaced.

{¶ 21} We must also reject the trial court's incorporation of common-law standing principles for a far more fundamental reason. As the Ohio Supreme Court has noted:

Standing does not flow from the common-law "personal stake" doctrine alone. As the United States Supreme Court has recognized, standing may also be conferred by a specific statutory grant of authority:

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a 'personal stake in the outcome of the controversy' [citation omitted] * * *.

Where, however, * * * [a legislative authority] has * * * provided by statute for judicial review * * *, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Sierra Club v. Morton* (1972), 405 U.S. 727, 731–732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636.

*Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75–76, 25 OBR 125, 495 N.E.2d 380. See also *Doran v. Northmont Bd. of Edn.*, 153 Ohio App.3d 499, 2003-Ohio-4084, 794 N.E.2d 760, ¶ 20 (statutory right to bring an alleged Sunshine Law violation pursuant to R.C. 121.22(I)(1)); *State ex rel. Mason v. State Emp. Relations Bd.* (1999), 133 Ohio App.3d 213, 217, 727 N.E.2d 181 (same); *ACLU v. Natl. Sec. Agency* (C.A.6, 2007), 493 F.3d 644, fn. 19 (distinguishing statutory standing from Article III standing). By enacting R.C. 4115.16(B), the Ohio legislature conferred a specific statutory grant of authority for an "interested party," as defined in R.C. 4115.03(F), to file a prevailing-wage action in the common pleas court in the event that the commerce director fails to rule on the administrative complaint within 60 days. *Sunesis*, 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, at ¶ 11. Therefore, the only issue is whether ABC is an interested party as defined in R.C. 4115.03(F), common-law standing notwithstanding. Id. (rejecting contractor's "personal stake" and Civ.R. 17(A) "real party in interest" standing arguments); *Edgerton*, 2007-Ohio-3958, 2007 WL 2216964, at ¶ 12 (R.C. 4115.03 et seq. are determinative of whether party has standing to bring a prevailing-wage complaint). To incorporate common-law-standing principles when the legislature has specifically authorized a party to bring suit is simply inappropriate. It is telling that the Ohio Supreme Court has resolved issues of standing in prevailing-wage cases exclusively as matters of statutory interpretation. See, e.g., *Gene's Refrigeration, Heating, & Air Conditioning*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, at ¶ 11–24; *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Mohawk Mechanical, Inc.* (1999), 86 Ohio St.3d 611, 613, 716 N.E.2d 198 ("This case turns on whether Local 33 meets the requirements of R.C. 4115.03(F)(3) * * *"). For all these reasons, we find that the trial court's incorporation of common-law standing in this case was erroneous.

{¶ 22} Second, we must reject IPS's argument that R.C. 4115.03(F)(1)'s use of the phrase "a contract" limits the definition of an interested party to a person who has submitted a bid on the particular contract from which the alleged prevailing-wage violation stems. To begin with, IPS's interpretation is contrary to the broad interpretation this and other courts have given to R.C. 4115.03(F). *Sunesis*, 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, at ¶ 5, citing *Edgerton*, 2007-Ohio-3958, 2007 WL 2216964. In *Edgerton*, this court found that Local 1581, a union representing carpenters and joiners, could bring an interested-party prevailing-wage action on behalf of plumbers and sheet metal workers

because Duerk Construction, a company that employed members of Local 1581, submitted a bid as a contractor on the public-improvement project. 2007-Ohio-3958, 2007 WL 2216964, at ¶ 5, 10, 19. This court found that Local 1581 had standing despite the fact that its members would have performed different functions on the public improvement. Id. at ¶ 10.

{¶ 23} Likewise, the court in *Ohio State Assn. of United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Industry v. Johnson Controls* found that the Ohio State Association of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("Pipefitters' Union"), a labor organization representing unions of pipefitters, could bring an interested-party prevailing-wage action on behalf of nonunion laborers because members of the Pipefitters' Union were employed by subcontractors who performed work on the public improvement. 123 Ohio App.3d 190, 195, 703 N.E.2d 861. In that case, the contractor argued that the Pipefitters' Union lacked standing to bring a prevailing-wage action on behalf of nonunion laborers who did not authorize the union to file a suit on their behalf. Id. at 194, 703 N.E.2d 861. The court rejected this argument, reasoning:

> A labor organization is given standing to bring a complaint on behalf of any person who is not paid the prevailing wage. To accept [the contractor's] position would limit a labor organization's standing to only complain where its membership were not paid the prevailing wage. This position is antithetical to the purpose of the prevailing wage law as well as to the plain meaning of R.C. 4115.03(F). In this case, [Pipefitters' Union's] membership was employed by subcontractors who performed work at Gateway. Accordingly, pursuant to R.C. 4115.03(F), [the Pipefitters' Union] was an interested party entitled to bring a complaint to the Administrator of the Bureau of Employment Services and subsequently had standing to initiate this lawsuit. See R.C. 4115.16(B).

Id. at 195, 703 N.E.2d 861. Similarly, the court in *Pipe Fitters Union Local 392 v. Kokosing Construction Co., Inc.*, found that Local 392, a pipefitters' union, could bring an interested-party prevailing-wage action on behalf of members of Laborers Local 265 because members of Local 392 were working on the public improvement for successful bidders on other bid packages. (Aug. 23, 1996), 1st Dist. Nos. C–950220 and C–950234, 1996 WL 482932, overruled on other grounds (1998), 81 Ohio St.3d 214, 690 N.E.2d 515. Kokosing argued that Local 392 lacked standing to file the prevailing-wage suit on behalf of Laborers Local 265, but the court rejected that argument, reasoning as follows:

> The record in this case indicates that the city provided a series of bid packages for the project, including the general contract for which Kokosing was the successful bidder. *Members of the pipe fitters union were working on the project for successful bidders on the other bid packages.*

Although the work which is the subject matter of the litigation herein, the process piping, was included in the general contract work as bid upon by Kokosing and was not in any separate specific bid package, we hold that the pipe fitters union was an interested party as defined by R.C. 4115.03(F). The pipe fitters union is a "bona fide organization of labor" that is authorized to represent employees of a person "who submit[ted] a bid for the purpose of securing the award of a contract for construction of the public improvement." The definition of "interested party" is broad enough to include a labor organization whose members worked on the construction of the public improvement *even though those members were working for a contractor who bid on a bid package that did not include the work in dispute.*

Because the pipe fitters union was an interested party, we hold that it had standing to file this complaint.

(Emphasis added.) Id. at *2. Finally, the court in *Sunesis* found that Local 372 was an interested party under R.C. 4115.03(F) because SK Construction, a company that employed Local 372 members, submitted a bid on the public improvement; therefore Local 372 "could contest the prevailing-wage issues on the entire project." 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, at ¶ 8, 13.

{¶ 24} We see no legally valid reason to interpret an association's interested-party status pursuant to R.C. 4115.03(F)(4) on behalf of its members who submit a bid for the purpose of securing the award of a contract for construction of the public improvement narrowly, while interpreting a labor organization's interested-party status pursuant to R.C. 4115.03(F)(3) on behalf of its members who are employees of persons who submit such bids broadly. To do so when the operative language triggering interested-party status is essentially the same would be inconsistent.[3] Aside from being inconsistent with prior precedent, IPS's position is also antithetical to the purpose of the prevailing-wage law. *Johnson Controls,* 123 Ohio App.3d at 195, 703 N.E.2d 861.

{¶ 25} As a final matter, we note that the trial court's observations that ABC was not a labor union, that no IPS employees were members of ABC, and

---

3. The operative language triggering an association's interested-party standing requires its members to be persons who submitted a bid for the purpose of securing the award of a contract for construction of the public improvement. R.C. 4115.03(F)(1) and (4). The operative language for a labor organization's interested-party standing requires that its members be *employees of* a person who submits a bid; otherwise, the employees of the person who submitted a bid must have authorized the labor organization to bring suit against the person who submits a bid. R.C. 4115.03(F)(1), (3). We note that the cited cases broadly interpreting labor organizations' standing did not involve situations in which employees authorized the prevailing-wage suit and therefore are not distinguishable from this case on that basis.

that no IPS employee authorized ABC to file a prevailing-wage complaint are all irrelevant, since ABC never alleged that it was an interested-party labor organization under R.C. 4115.03(F)(3). It is also irrelevant that ABC's complaint sought to redress damages allegedly sustained by IPS's employees because the plain language of R.C. 4115.03(F) contains no requirement that the complaint redress damages sustained by the complainant's member-employees. See *Johnson Controls*, 123 Ohio App.3d at 194–195, 703 N.E.2d 861 (rejecting contractor's argument that the union interested party must represent the employees who benefit from the lawsuit as "antithetical to the purpose of the prevailing-wage law as well as to the plain meaning of R.C. 4115.03(F)"). See also *Mohawk*, 86 Ohio St.3d at 614, 716 N.E.2d 198 (rejecting appellate court's interpretation that R.C. 4115.03(F)'s plain language required that the public improvement be "competitively" bid and that the labor organization was a party to a collective-bargaining agreement with the employer/contractor in question). Furthermore, Ohio's prevailing-wage laws *require* that any additional wages, plus a 25 percent penalty, be paid to the employees who were not provided prevailing wages—here, IPS employees. R.C. 4115.10(A) and (C) and 4115.16(B).[4] The only award to the interested party, other than mere vindication of the prevailing-wage law, is the payment of its attorney fees if the trial court finds a violation. R.C. 4115.16(D). For these same reasons, it is also irrelevant whether ABC or its members suffered "specific monetary damage" as a result of IPS's alleged prevailing-wage-law violations. Furthermore, "specific monetary damages" is not part of R.C. 4115.03(F)'s definition of an interested party. See *Mohawk*, 86 Ohio St.3d at 614, 716 N.E.2d 198. Therefore, we are not persuaded that ABC lacked standing for these additional reasons given by the trial court.

{¶ 26} To conclude, ABC is an interested party under the plain language of R.C. 4115.03(F)(1) and (4), since ABC is *any* (of whatever kind) association having as members *any* (of whatever kind) person (Westfield Group) who submitted a bid for the purpose of securing the award of a contract for construction of the University of Toledo public-improvement projects. *Edgerton*, 2007-Ohio-3958, 2007 WL 2216964, at ¶ 19. Thus, ABC had standing to file a complaint with the director of commerce and subsequently file a complaint in the court of common pleas pursuant to R.C. 4115.16(A) and (B).

{¶ 27} For these reasons, ABC's assignment of error is sustained, and IPS's second assignment of error is overruled.

---

4. R.C. 4115.10(A) also imposes an additional monetary penalty upon any contractor/employer who violates the prevailing-wage law, which is deposited into a penalty-enforcement fund administered by the director of Commerce.

Cross–Appellant IPS's Assignment of Error No. I

The trial court erred by denying IPS any consideration of attorney fees, both under R.C. 4115.16 and under Civ.R. 11.

{¶ 28} In its first assignment of error on cross-appeal, IPS argues that the trial court erred by failing to consider its motion for attorney fees under both R.C. 4115.16(D) and Civ.R. 11.

{¶ 29} Since we have found that the trial court erred in granting summary judgment based on ABC's purported lack of standing, we find that IPS's first assignment of error dealing with attorney fees is now moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶ 30} Cross-appellant IPS's first assignment of error is, therefore, overruled.

{¶ 31} Having found error prejudicial to the appellant and cross-appellee, ABC, in the particulars assigned and argued, we reverse the judgment of the trial court, and we remand the cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WILLAMOWSKI, P.J., concurs in Judgment Only.

ROGERS, J., concurs.

WILLAMOWSKI, ROGERS, and PRESTON, JJ., of the Third District Court of Appeals, sitting by assignment.

